**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **BRENDA URNIKIS-NEGRO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 06 C 6014** |
| ) | |
| **AMERICAN FAMILY PROPERTY** ) | |
| **SERVICES, INC., NICOLE LASH,** ) | |
| **and TODD LASH,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Brenda Urnikis-Negro sued her former employer, American Family Property Services, Inc., and two of its principals under the Fair Labor Standards Act, seeking to recover for unpaid overtime wages. At the bench trial held after the Court denied Urnikis-Negro's motion for summary judgment, she contended that she was entitled to be compensated for over 2,500 hours of overtime at a rate of $37.50 per hour, or over $90,000, and she sought a doubling of this pursuant to FLSA's liquidated damages provision.

The Court found in Urnikis-Negro's favor regarding liability but found her testimony regarding the hours she had worked "significantly exaggerated and largely lacking in credibility." *Urnikis-Negro v. Am. Family Prop. Servs. Inc.*, No. 06 C 6014, slip op. at 17 (N.D. Ill. July 21, 2008). The Court found that Urnikis-Negro had worked approximately 1,490 overtime hours and, as defendants urged, calculated the unpaid

wages using the "fluctuating hours" method described in Department of Labor regulations. *See id.* at 19-20. The Court concluded that the unpaid overtime compensation amounted to $12,233 and awarded Urnikis-Negro an equal amount of liquidated damages, for a total of $24,466.

Urnikis-Negro then petitioned for an award of attorney's fees and expenses pursuant to 29 U.S.C. § 216(b). In her petition for fees, Urnikis-Negro alleged that her "unedited" attorney's fees and expenses amounted to $154,710. However, after the information-exchange process mandated by Local Rule 54.3, she reduced her request to $126,327. Defendants, who paid their legal counsel approximately $70,000 in attorney's fees and expenses to defend the case, made specific objections to $46,647 of the amount Urnikis-Negro's counsel requested (leaving a little under $80,000) and also argued that Urnikis-Negro should not be awarded fees greater than the amount of damages the Court had awarded. In her reply brief, Urnikis-Negro reduced the amount she requested to $117,504. Urnikis-Negro also stated that her counsel had spent significant time in connection with the petition for fees and said she would file a supplemental request later.

On December 15, 2008, the Court issued a preliminary ruling, dealing with certain disputed points. *Urnikis-Negro v. Am. Family Prop. Servs., Inc.*, No. 06 C 6014, 2008 WL 5227179 (N.D. Ill. Dec. 15, 2008). The Court rejected defendants' contention that the fee award should not exceed the damage award but stated that it would, as required by law, consider "the degree of success [Urnikis-Negro] achieve[d] in deciding how generous a fee award should be." *Spegon v Catholic Bishop of Chicago*, 175 F.3d 544, 558 (7th Cir. 1999), *cited in Urnikis-Negro*, 2008 WL 5227179, at *1.

The Court stated, however, that it was unable to assess the reasonableness of Urnikis-Negro's fee request completely due to the fact that plaintiffs had submitted only day-by-day information regarding attorney time without any overall statement of the time spent or, more particularly, an activity-based breakdown of the time spent per attorney. *Id.* at *2. The Court found that it was not unreasonable to have two attorneys work on, prepare for trial, and try the case, but that certain tasks (e.g. preparation for and attendance at depositions) did not reasonably require two lawyers; it was unreasonable to have more than two attorneys working on the case at a particular time; and that it was unreasonable to shift to defendants *both* the time required for the second-chair trial attorney to learn the case *and* the overlapping time her predecessor spent on the case. *Id.* The Court sought further information geared toward quantifying these factors and also directed Urnikis-Negro to quantify the time claimed for preparing and briefing the fee petition. *Id.* at *3.

The parties have provided the additional information the Court has requested. In her final submission, plaintiff has reduced her fee request by about $5,000, to $112,424.25. The Court rules on the fee petition as stated below.

### Discussion

As a prevailing plaintiff, Urnikis-Negro is entitled to an award of reasonable attorney's fees. 29 U.S.C. § 216(b); *Batt v Micro Warehouse, Inc.*, 241 F.3d 891, 893 (7th Cir. 2001). The Court begins by determining the so-called "lodestar" – a reasonable hourly rate multiplied by the number of hours reasonably expended on the litigation. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir.

2001). Defendants have not objected to the hourly rates proposed by Urnikis-Negro, so the Court turns to the question of whether the attorney time requested for her counsel was reasonably expended.

In response to the Court's request for an activity-based breakdown of each attorney's time, Urnikis-Negro's counsel provided the chart that appears on page six of this decision. The chart does not include time spent working on the fee petition. The chart reflects that five attorneys expended significant time working on the case at various stages: Aaron Maduff, an experienced partner in the firm of Maduff & Maduff who served as lead counsel; Michael Maduff, a partner with even more experience who appears to have focused primarily on settlement negotiations and review of the summary judgment motion, as well as on litigation of the fee petition; Christine Hatzidakis, an associate who second-chaired the trial and came into the case only at the trial preparation phase; and two other associates, Jason Johnson and Meaghen Russell, who appear to have worked on the case throughout its duration.

Plaintiffs' counsel provide an explanation for why so many lawyers worked on the case – claimed efficiencies from division of labor – but it does not render reasonable the time spent by five lawyers working on a case that was perhaps more complicated than some FLSA cases but, all in all, not a particularly complex case. The Seventh Circuit has noted, in the related context of determining the reasonableness of an attorney's hourly rate, that judges in this District have noted that "FLSA cases are less complex than Title VII and other employment-related civil rights litigation." *Small*, 264 F.3d at 708. Though the Court would hesitate to go quite that far, the comparison is accurate as a general rule, and this case was not terribly complex: with regard to

4

liability, it largely boiled down to a credibility determination concerning the nature of the work Urnikis-Negro performed.

Given these circumstances, the Court adheres to its earlier determination that *in this case* (though not in every case, as plaintiff suggests the Court is saying), two lawyers were plenty, and more than two were excessive, with some exceptions noted below.  Though the Court acknowledges plaintiff's division-of-labor point, we are not talking about an assembly line here.  When labor on particular legal tasks is divided among different attorneys, some overlap is virtually inevitable, and some inefficiencies are likely.  In a large and/or complex case, it is not unreasonable, from a fee-shifting perspective, to incur some such inefficiencies, but the same is not true in a modestly-sized and relatively uncomplicated case like this one.

The chart provided by Urnikis-Negro's counsel follows:

| Initial Pleading | % of Attorney's Total Time | Hours | Charge |
|---|---|---|---|
| Aaron B. Maduff | 2.36% | 2.8 | $1,111.5? |
| Christina D. Hatzidakis | 0.00% | 0 | $0.00 |
| Jason M. Johnson | 24.15% | 11.5 | $2,701.1? |
| Meaghen A. Russell | 8.09% | 4.5 | $817.8? |
| Michael L. Maduff | 6.47% | 1.8 | $769.2? |
| Other | 2.19% | | $39.1? |
| Total | | 20.60 | $5,438.9? |

| Settlement Negotiations | % of Attorney's Total Time | Hours | Charge |
|---|---|---|---|
| Aaron B. Maduff | 1.29% | 1.6 | $805.3? |
| Christina D. Hatzidakis | 0.00% | 0 | $0.00 |
| Jason M. Johnson | 9.38% | 4.6 | $1,069.5? |
| Meaghen A. Russell | 3.24% | 1.8 | $327.1? |
| Michael L. Maduff | 20.32% | 5.6 | $2,417.6? |
| Other | 0.00% | | $0.00 |
| Total | | 13.60 | $4,419.6? |

| Discovery | % of Attorney's Total Time | Hours | Charge |
|---|---|---|---|
| Aaron B. Maduff | 9.55% | 11.3 | $4,495.7? |
| Christina D. Hatzidakis | 0.00% | 0 | $0.00 |
| Jason M. Johnson | 11.41% | 6.2 | $1,454.4? |
| Meaghen A. Russell | 35.72% | 19.8 | $3,610.3? |
| Michael L. Maduff | 1.85% | 0.6 | $219.7? |
| Other | 35.12% | | $629.0? |
| Total | | 37.70 | $10,410.3? |

| Motion for Summary Judgment | % of Attorney's Total Time | Hours | Charge |
|---|---|---|---|
| Aaron B. Maduff | 3.11% | 3.7 | $1,465.2? |
| Christina D. Hatzidakis | 0.00% | 0 | $0.00 |
| Jason M. Johnson | 34.11% | 18.5 | $4,348.5? |
| Meaghen A. Russell | 38.91% | 21.1 | $3,502.4? |
| Michael L. Maduff | 42.73% | 11.7 | $5,062.4? |
| Other | 32.12% | | $575.3? |
| Total | | 55.10 | $15,374.0? |

| Trial/Trial Preparation | % of Attorney's Total Time | Hours | Charge |
|---|---|---|---|
| Aaron B. Maduff | 83.68% | 98.5 | $39,384.0? |
| Christina D. Hatzidakis | 100.00% | 147.9 | $28,919.0? |
| Jason M. Johnson | 24.91% | 13.6 | $3,175.1? |
| Meaghen A. Russell | 14.34% | 7.9 | $1,449.9? |
| Michael L. Maduff | 28.64% | 7.9 | $3,406.5? |
| Other | 30.57% | | $547.5? |
| Total | | 275.70 | $76,781.2? |
| | | Overall Total | $112,424.2? |

| Attorney | Total Hours | Total Charge |
|---|---|---|
| Aaron B. Maduff | 117.6 | $47,063.8? |
| Christina D. Hatzidakis | 147.4 | $28,919.0? |
| Jason M. Johnson | 54.3 | $12,748.5? |
| Meaghen A. Russell | 54.8 | $10,106.5? |
| Michael L. Maduff | 27.6 | $11,896.7? |
| Other | | $1,791.1? |
| Total | 401.7 | $112,424.2? |

For the reasons stated above, the Court will exclude, as duplicative and/or excessive and unreasonably shifted to defendants, the following:

1) the 4.5 hours spent by Ms. Russell and the 1.8 hours spent by Michael Maduff working on the "initial pleading," in light of the fact that Mr. Johnson and Aaron Maduff spent, respectively, 11.5 hours and 2.8 hours

6

on that task;

2)      the 21.1 hours spent by Ms. Russell and the 11.7 hours spent by Michael
        Maduff on the motion for summary judgment, in light of the significant time
        spent on that task by Aaron Maduff and Mr. Johnson, the two lawyers with
        primarily responsibility for the case at that point; and

3)      the 13.6 hours spent by Mr. Johnson, 7.9 hours by Ms. Russell, and 7.9
        hours spent by Michael Maduff on trial preparation, in light of the total of
        over 245 hours spent on pretrial order preparation, trial preparation, and
        trial (for a two-day trial) by Aaron Maduff and Ms. Hatzidakis, the two
        lawyers who tried the case.

These reductions amount to $1,587.11 for point 1); $8,984.89 for point 2); and

$8,031.54 for point 3), a total of $18,603.54.  The Court will not exclude the time spent

by Ms. Russell or Michael Maduff on settlement negotiations and discovery, as that time

does not appear to have been duplicative or unnecessarily overlapping of time spent by

others on those phases of the case.

        In addition, as suggested earlier, Ms. Hatzidakis essentially took over the

second-chair role as the case approached the trial preparation phase.  Though

plaintiffs' counsel contend that the change of attorneys did not result in any duplication

of effort, that contention does not hold water.  It is virtually certain that some start-up

time was required for Ms. Hatzidakis to get up to the speed that Mr. Johnson already

would have had if he had continued with the case.  Given Ms. Hatzidakis charging of

just under 148 hours for preparing for and participating in a two-day bench trial

(including, to be sure, preparation of a final pretrial order), the Court will reduce that

aspect of the time claimed by thirty hours, a total of $5,850 given Ms. Hatzidakis's rate of $195 per hour.

This amounts to a reduction of the revised "lodestar" figure proposed by Urnikis-Negro by about twenty percent, from $112,424.25 to $87,970.71. The Court rejects defendants' remaining challenges to the particulars of the time claimed by plaintiff's counsel.

The Court turns next to defendants' contention that the fees requested are disproportionate compared to the amount recovered at trial and should be reduced for that reason and because Urnikis-Negro covered far less than she sought. As noted earlier, there is no rule that attorney's fees in a fee-shifting case must be proportional to the damage recovered. *Spegon*, 175 F.3d at 558. On the other hand, the degree of a prevailing party's success is a factor a court may, and perhaps must, consider in determining an attorney's fee award. *See, e.g., Deicher v. City of Evansville*, 545 F.3d 527, 545-46 (7th Cir. 2008); *Spegon*, 175 F.3d at 558. The Seventh Circuit has stated that

> [i]n a case involving a single claim or related claims, the court is directed to ask whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." In so doing, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." When a plaintiff has obtained an excellent result, his attorney should recover a fully compensable fee (i.e., the modified lodestar amount), and the fee "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." However, "[i]f . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." In such a case, the district court has the discretion to reduce the modified lodestar amount to reflect the degree of success obtained.

8

*Spegon*, 175 F.3d at 557-58 (internal citations omitted; quoting *Hensley v. Eckerhardt*, 461 U.S. 424, 434, 435, 436-37 (1983)).

Were the Court to consider Urnikis-Negro's degree of success in a vacuum, there would be a solid basis to reduce further the amount of the attorney's fees award. But the Seventh Circuit has made it clear that degree of success is not to be considered in a vacuum; a court must also consider the significance of the legal issue involved and the public purpose of the litigation. *Deicher*, 545 F.3d at 546. In its December 15 decision, the Court discussed the important public policy considerations underlying the FLSA and the resulting justification for awarding a fee that exceeds the damage award. Recoveries in individual FLSA suits like this one typically are modest; they involve cases in which a law-flouting employer has, in essence, tried to nickle-and-dime his employee. With that backdrop, limiting recoverable fees when a plaintiff recovers relatively modest damages in a FLSA case would create a significant disincentive for lawyers to take on such litigation, which, in turn, would undermine Congress' intent in creating the statute and authorizing private enforcement actions. For these reasons, the Court declines to make a further reduction in plaintiff's recoverable fees on the ground of limited success on the merits.

The final question concerns the amount of fees to be awarded for preparing and litigating the fee petition. Plaintiff seeks $28,625, representing just 10.9 of Aaron Maduff's time, 37.4 hours of Michael Maduff's time, 43.5 hours of the time of Walker Lawrence as a clerk, and 5.6 hours of Mr. Lawrence's time as an attorney. The Court is constrained to say that this is unreasonable in the extreme. Plaintiff attributes the extra

9

work to defendants' failure to cooperate in the information-exchange process under Local Rule 54.3 and the large number of objections by defendants to attorney time claimed by plaintiff. The Court acknowledges that Rule 54.3 can be unduly cumbersome, and it is certainly true that defendants objected to a large number of the time entries claimed by plaintiff's counsel. But those objections were meritorious in significant part; they largely concerned claims of unnecessary duplication of effort. Had the appropriate culling been done by plaintiff's counsel in the first instance, the Rule 54.3 process would have been far less time-consuming.

Rather than address the fee-litigation hours item by item, the Court believes it more appropriate to impose a blanket reduction and award an amount it believes represents the reasonable amount of fees in view of the factors noted above. The Court will award plaintiff one-fourth of the fees requested for litigating the fee petition, or $7,160.

## Conclusion

For the reasons stated above, the Court grants in part plaintiff's motion for attorney's fees [docket no. 89] and awards plaintiff attorney's fees and expenses in the amount of $95,130.71.

MATTHEW F. KENNELLY
United States District Judge

Date: January 26, 2009